**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

ALI A. ALADIMI,                                         Case No. 1:09-cv-398

             Plaintiff,                                 Barrett, J.
                                                        Bowman, M.J.
v.

HAMILTON COUNTY JUSTICE CENTER, et al.,

             Defendants.

**REPORT AND RECOMMENDATION**

This prisoner civil rights case was initiated by Plaintiff Ali Aladimi *pro se* on June 3, 2009, and was referred to a magistrate judge for initial review pursuant to the general practice of this Court. See 28 U.S.C. §636(b)(1). Since that time, the case has been twice reassigned, most recently having been assigned to the undersigned on December 6, 2010. (Doc. 14). Having proceeded *pro se* for the first two years of litigation, Plaintiff secured counsel on May 25, 2011. Facing a barrage of dispositive motions by all named Defendants, Plaintiff's new counsel both responded to those motions and filed a motion seeking leave to file a second amended complaint. Because the prior order of reference remains in effect, this Report and Recommendation addresses the three dispositive motions filed by Defendants (Docs. 23, 32, 35), as well as Plaintiff's motion to amend his complaint (Doc. 36). For the reasons the follow, I now recommend that Defendants' motions be GRANTED and that Plaintiff's motion be DENIED.

**I. Factual and Procedural History**

Plaintiff's *pro se* original complaint identified only one Defendant, the physical

building known as the "Hamilton County Justice Center," ("HCJC"), although Plaintiff also referenced an unidentified number of "John Doe(s)." (Doc. 4).  Plaintiff states that the complaint "will be ammended [sic] as required upon my release" from the Butler County facility in which he was apparently incarcerated at the time of filing, June 3, 2009.[1]  (Doc. 4 at 4).  Plaintiff anticipated release from the Butler County facility sometime in August of 2009.  (*Id.*).  He explains that although his incarceration has "made it very difficult to fully and properly file the Complaint with full names and addresses of the defendants," he is "only filing this Complaint after I became aware that the statute of limitation is near to expire."  (*Id.*).

The then-presiding magistrate judge reviewed the case for frivolousness under 28 U.S.C. §§1915(e)(2)(B) and 1915A(b), and construed Plaintiff's allegations as follows:

> Plaintiff's complaint alleges that he is a Muslim and Arab American of Middle Eastern origin.  He alleges that during various times between 2004 and July 2008, he was housed at the Hamilton County Justice Center.  He states that while an inmate at the Justice Center, he was denied regular weekly Muslim services; denied the right to conduct the five daily prayers mandated by his faith; subjected to verbal and physical abuse by inmates and staff when he attempted to pray; and subjected to offensive and derogatory remarks by clergy of other faiths who visited the Justice Center.  He alleges that he was forbidden from praying outside his cell, while inmates of other faiths were permitted out-of-cell prayer.  He also alleges he was frequently and purposely housed with homosexual inmates who made unwanted sexual advances towards him.  Plaintiff states he is currently being housed in the Butler County Jail awaiting transfer to a Bureau of Prisons facility and has not been able to discover the identifies of the individual defendants.  He requests that the Court permit him to file this action and to amend his complaint at a later date to name the appropriate defendants and to include "an appropriate relief demand."

(Doc. 6 at 2).  Magistrate Judge Hogan ultimately issued service after concluding that

---

[1] Plaintiff does not list the Butler County Jail as his address but instead lists a private residence at 2916 Forest Glen Court, Beavercreek, Ohio.

Plaintiff's complaint "liberally construed, alleges sufficient facts to state a claim for relief under the First Amendment for a denial of the right to practice his religious beliefs and under the Equal Protection Clause."  (Doc. 6 at 3).[2]

Perhaps for reasons of judicial economy, Judge Hogan did not address the applicable statute of limitations, or the fact that the physical jail facility is not ordinarily a proper defendant capable of being sued.  Judge Hogan's order also was silent concerning the identification or service of any "John Doe" Defendants, or in what capacity those individuals might be sued.   However, in recognition of the serious deficiencies in Plaintiff's original complaint and Plaintiff's stated intention to promptly amend on or about August 2009, two months after the original filing date, Judge Hogan's order stated that although Plaintiff's claims deserved "further development and consideration" sufficient to proceed, the claims would be "subject to further review by the Court upon amendment of the complaint."  (Doc. 6 at 3).   Not surprisingly, a summons subsequently addressed by Plaintiff "to whom it may concern" and directed to the physical address of the jail facility was returned unexecuted, as no one was willing to accept service at that address for a Defendant identified only as "to whom it may concern."  (Doc. 7).

More than fifteen months after suit was initiated, on September 24, 2010, Judge

---

[2]The Court takes judicial notice of the fact that Plaintiff has litigated claims with some regularity in this Court and in the Eastern District of Kentucky.  In addition to *pro se* post-conviction proceedings concerning his federal criminal convictions, Plaintiff has pursued several civil cases, two of which contain allegations similar to those presented here, albeit against different sets of Defendants.  *See, e.g., Aladimi v. Grant County Detention Center,* Covington Civil Case No. 2:09-cv-168 (dismissed *sua sponte* with prejudice on 1/27/10 as barred by the applicable statute of limitations); *Aladimi v. Alvis House Cope Center,* Dayton Civil Case No. 3:10-cv-121 (granting in part motion for judgment on pleadings following appearance by counsel; tendered motion for summary judgment still pending); *see also Aladimi v. Sheriff Richard Jones*, Cincinnati Civil Case No. 1:08-cv-810 (dismissed in part on December 3, 2008 as frivolous under 28 U.S.C. §1915(e), with remaining claims dismissed on summary judgment by R&R filed June 2, 2010).

Hogan issued an "Order to Show Cause," directing Plaintiff to show cause why his complaint should not be dismissed based upon his failure to achieve service as to any Defendant within the 120 days allotted by Rule 4(m), Fed. R. Civ. P. (Doc. 8). Shortly thereafter, Plaintiff notified the Court of a change of address and requested additional time to respond to the "show cause" order. (Doc. 10). That request was granted by then newly-assigned Magistrate Judge Wehrman, who instructed Plaintiff to respond to the "show cause" order not later than December 1, 2010. (Doc. 11).

On December 1, 2010, Plaintiff filed a response to the prior "show cause" order, baldly asserting that he had "made a good faith effort" to achieve service, and seeking additional time to perfect service on grounds that he "now understands" the "jurisdictional prerequisite" of service, and is "simultaneously taking the correct steps to perfect service in this matter." (Doc. 13 at 2). The only other statements in Plaintiff's response referred to his *pro se* status and inability to retain counsel.

On December 6, 2010, the case was reassigned to the undersigned magistrate judge.[3] On December 9, 2010, the Court entered a Memorandum Order stating that Plaintiff's only explanation for his failure of service - that he proceeds *pro se* and had been unable to secure counsel - clearly did **not** constitute "good cause" for Plaintiff's failure to perfect service under Rule 4(m), Fed. R. Civ. P. (Doc. 16). Notwithstanding the Plaintiff's failure to demonstrate good cause for *any* extension, and based partly on Plaintiff's representation that he was "simultaneously taking the correct steps" to perfect service, the Court exercised its discretion "on this one occasion" by permitting Plaintiff to perfect service

---

[3]As the undersigned began full-time service to the Court on December 6, 2010, several hundred cases were transferred on the same date.

4

"on or before December 29, 2010." (Doc. 16 ¶2). The Court directed plaintiff to "file with the Clerk of Court an additional copy of his complaint, properly completed summons forms, and United States Marshal forms for each of the defendants on or before **December 29, 2010."** (*Id.,* emphasis original). Plaintiff was further directed to "provide instructions for service" on "the Hamilton County Justice Center and any John Doe defendants (to the extent identified)." (*Id.*). Thus, through the generous exercise of the Court's discretion, Plaintiff was permitted to attempt to perfect service of his complaint more than 18 months after he initiated suit.

On the specified deadline, Plaintiff took advantage of the Court's leniency by filing what was docketed as an "amended complaint," which is **virtually identical** to Plaintiff's original complaint, to the extent that it identifies as Defendants only the "Hamilton County Justice Center" and unspecified "John Doe(s)." (Compare Doc. 4 with Doc 18 at 7-19). However, the first page of Plaintiff's "amended" pleading states that he is "refilling [sic] this complaint in accordance with the [court's] instructions," and includes a caption that omits any "John Doe" designation and instead lists four new individual Defendants.[4] (Doc. 18 at 1). Plaintiff also tendered summons forms for the Hamilton County Justice Center, and for the four newly identified Defendants: (1) Correctional Officer David McElroy;[5] (2) Lt. Jacqueline Reed; (3) Sergeant Michelle Moore; and (4) Daniel Brian Buzek. (Doc. 19).

The Court thereafter directed the United States Marshal to attempt service on each

---

[4]None of the subsequent pages of the amended complaint contain any reference to the newly identified individual defendants. The only other difference in the two complaints is the inclusion of a copy of the Court's prior order and a CM/ECF notification page.

[5]Defendant is identified on the docket sheet as C/O David Elroy, although both parties identify him by the surname of "McElroy." In this Report, Defendant will be referred to as "McElroy."

of the five Defendants in accordance with Plaintiff's instructions.  (Doc. 20).  The returned summons forms reflect that the four individual Defendants were served at the end of April 2011, as was the Hamilton County Justice Center.[6]  (Doc. 29).  However, all Defendants promptly filed dispositive motions.

On May 9, 2011, Defendant Brian Buzek moved to dismiss Plaintiff's complaint against him for failure to state a claim under Rule 12(b)(6).  (Doc. 23).  On May 25, 2011, the Hamilton County Justice Center filed its own motion to dismiss for failure to state a claim, on grounds that a building "cannot be classified as a person."  (Doc. 32).  Last, the individual County Defendants, McElroy, Reed and Moore, filed a motion for judgment on the pleadings under Rule 12(c), citing the applicable statute of limitations, failure of timely service, failure to state a claim, and raising the additional defense of qualified immunity.  (Doc. 35).

Around the same time, Plaintiff secured counsel.  (Doc. 25).  Now proceeding through counsel, on June 20, 2011, Plaintiff filed a motion seeking leave to file a second amended complaint.  (Doc. 36).  Plaintiff states that the amendment is sought "to cure omissions made in the pro se pleadings," and argues that any failure to earlier amend "is excusable because the First Amended Complaint was filed pro se by Mr. Aladimi in an attempt to have the Defendants served."  (Doc. 36 at 2).  Through counsel, Plaintiff also has responded to Defendants' motions.

---

[6]Each of the forms was addressed to "Defendant Hamilton County Justice Center" with the name of the "individual to be served" listed as, respectively, individual Defendants Buzek (served at a home address), Reed, "Elroy," and Moore.  The Hamilton County Justice Center was served through Mr. Ed Boldt.

## II.  Analysis

Defendants' motions raise a variety of defenses, including arguments pertaining to the long-delayed service of Plaintiff's first "amended" complaint.  Defendants present many of the same arguments in opposition to Plaintiff's motion to amend his complaint a second time through counsel.  Prior to turning to the parties' motions, however, it is appropriate to revisit the Plaintiff's claims under the Court's authority to screen complaints pursuant to 28 U.S.C. §1915(e).

### A.  Screening the First Amended Complaint under 28 U.S.C. §1915(e)

Judge Hogan described Plaintiff's allegations generally as pertaining to the time period of 2004-2008, and stated that he would review Plaintiff's complaint anew for frivolousness following Plaintiff's anticipated amendment.  However, rather than amending his complaint within two months of the original filing date as Plaintiff stated he would do, Plaintiff delayed for more than a year and a half to file a so-called "amended complaint" on December 29, 2010.  By that time, Magistrate Judge Hogan had retired, and the "amended complaint" was served without undergoing the full screening that Judge Hogan had intended to take place under 28 U.S.C. §1915(e).

Fortunately, this procedural irregularity may now be remedied.  The language of 28 U.S.C. §1915(e)(2) provides that a court may dismiss a case "at any time" if a court determines that complaint does not meet minimal requirements for continued prosecution. The Sixth Circuit has affirmed that §1915(e)(2) remains applicable throughout the litigation process.  *McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997)(abrogated on other grounds by *Jones v. Bock*, 549 U.S. 199 (2007)).  Plaintiff's complaint should now be

dismissed under §1915(e)(2) because it is frivolous and because it fails to state a claim upon which relief may be granted.  In the alternative, and for many of the same reasons, all of Defendants' motions should be granted, and Plaintiff's motion to further amend should be denied.

Under Rule 8 of the Federal Rules of Civil Procedure, a plaintiff need only plead "a short and plain statement of the claim showing that the pleader is entitled to relief."   Fed. R. Civ. P. 8(a)(2).  However, in recent years, the Supreme Court has brought greater focus to that pleading standard, holding first in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563, 127 S.Ct. 1955, 1969 (2007) that the "famous" no-set-of-facts formulation "has earned its retirement" and instituting a new standard that a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face" *Id.* at 1974.  In *Ashcraft v. Iqbal*, 129 S.Ct. 1937 (2009),[7] the Supreme Court explained: "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949.

Under *Iqbal,* a trial court evaluating a complaint must cipher out "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" from legal conclusions that are supported by factual allegations. *Id.* The first step is to identify the elements of the plaintiff's claim, in order to determine which allegations are mere legal conclusions, as opposed to factual allegations entitled to the "assumption of truth." *Id.* at 1951 ("We begin...by identifying the allegations in the complaint that are not entitled to the assumption of truth").  To survive a Rule 12(b)(6) motion to dismiss, a

---

[7] *Iqbal* was published on May 18, 2009, just two weeks prior to Judge Hogan's initial review.

plaintiff must provide more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action."  *Twombly*, 127 S. Ct. at 1965.

Neither Plaintiff's complaint, his identical first amended complaint,[8] nor the original construction of Plaintiff's allegations by Magistrate Judge Hogan contain reference to any statutory basis for this Court's jurisdiction.  Plaintiff's complaint refers generally only to a violation of his "civil rights" and to a violation of his "religious rights," which Judge Hogan reasonably construed as stating a claim "under the First Amendment for a denial of the right to practice his religious beliefs and under the Equal Protection Clause" of the Fourteenth Amendment.  (Doc. 6 at 3).  Based upon Plaintiff's status as a prisoner, and because he was alleging that unknown jail officials had violated his rights under the First and Fourteenth Amendments to the United States Constitution, the case was docketed as arising under 42 U.S.C. §1983.  *See generally Cruz v. Beto*, 415 U.S. 319 (1972)(holding that a prisoner who alleges that he is not permitted to practice his religion states a claim for a violation of his First and Fourteenth Amendment rights under 42 U.S.C. §1983). When the claims contained in Plaintiff's amended complaint are more closely reviewed, it is apparent from the face of the complaint that all claims are barred by the applicable statute of limitations, among other reasons.

### 1.  Two-Year Statute of Limitations

The statute of limitations for claims arising under 42 U.S.C. §1983 in Ohio is two years.  *See* Ohio Rev. Code Ann 2305.10; *Browning v. Pendleton*, 869 F.2d 989, 992 (6th Cir. 1989).  Plaintiff's articulated concern with the statute of limitations when he tendered

---

[8]Because the original and first amended complaints are identical with the exception of a cover page, the Court's references to Plaintiff's complaint applies equally to both documents.

his complaint on June 3, 2009 clearly was well-founded, given his vague references to alleged conduct during intermittent periods of incarceration spanning "6 years since 2001." Any conduct alleged to have occurred more than two years prior to the date the complaint was filed, or prior to June 3, 2007, is subject to *sua sponte* dismissal by this Court under 28 U.S.C. §1915(e). *See Barnett v. Luttrell,* 414 Fed. App'x 784, 787 (6th Cir. 2011)(refusing to review *sua sponte* dismissal of time-barred claims); *Ashiegbu v. Kim*, 145 F.3d 1329, 1998 WL 211796 (Table, 6th Cir. April 24, 1998), *cert denied*, 525 U.S. 857 (§1915(e) *sua sponte* dismissal is appropriate where claim is barred by statute of limitations); *Aladimi v. Grant County Detention Center,* Covington Civil Case No. 2:09-cv-168 (E.D. Ky, January 2010).  Thus, no violation of Plaintiff's rights within a 6-year period "since 2001" could provide the basis for a suit filed in 2009 under 42 U.S.C. §1983.

Very few dates are referenced in Plaintiff's complaint, and fewer still fall within the applicable statute of limitations.  For example, among the lone factual details provided by Plaintiff, he recounts an event that occurred "as early as Jan[uary] or Feb[ruary] of 2007," in which an unidentified jail "officer" asked him if he was a terrorist.  (Doc. 18 at 16).  Aside from failing to state any articulable claim, the referenced dates precede the relevant statute of limitations.

Just two other references to any dates are scattered among Plaintiff's allegations.  First, in the same sentence in which he refers to being "denied" attendance at weekly Muslim services while intermittently incarcerated at the jail "throughout the 6 years since 2001," he incongruously refers to the same denial of access as having occurred "as early as December of 2004 and continued every time I was brought back to HCJC until July

10

2008." (Doc. 18 at 13).   To the extent that any such denial of rights is alleged to have occurred during periods of incarceration beyond June of 2007, the original claim might not be barred - if otherwise viable.   However, as discussed below, the claims stated in Plaintiff's amended complaint are in fact barred by the applicable statute of limitations, because Plaintiff failed to identify any viable Defendant prior to the expiration of the limitation period.

The only other reference to dates is to "the period between May-July" of "[l]ast year," which the Court assumes refers to 2008, given that the original complaint was filed in June of 2009.  Plaintiff alleges that various unnamed officers "purposely housed" a homosexual male in his cell "for provocation" despite the availability of other empty cells during that time period.  (Doc. 18 at 17).

Despite the existence of these few allegations ostensibly within the limitations period, all of Plaintiff's claims against Defendants newly identified on December 29, 2010 are statutorily barred.  It is well-established that the filing of a complaint against "John Doe" defendants does not toll the running of the statute of limitations against those parties.  *See Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996).  An attempt to substitute named defendants for previously identified "John Doe" defendants is considered a change in parties which must meet the requirements of Rule 15(c) to relate back to the filing date of the original complaint.  *Id.*; *see also  Moore v. Tenn.*, 267 Fed. App'x 450, 455 (6th Cir. 2008); *Force v. City of Memphis*, 101 F.3d 702, 1996 WL 665609 (6th Cir. Nov. 14, 1996); *Bradford v. Bracken County*, 767 F. Supp.2d 740, 749 (E.D. Ky. 2011);  *DeBois v. Pickoff, MD*, 3:09-cv-230, 2011 WL 1233665 *10 (S.D. Ohio, March 28, 2011) (holding that *Krupsk*i

11

*v. Costa Crociere*, 130 S. Ct. 2485 (2010) did not alter established law that "the addition of new parties alongside those that are already part of the action precludes relation back to the original complaint."); *Gordon v. Jones*, 2011 WL 590316 *2 (W.D. Ky. Feb. 10, 2011). Because Plaintiff's claims allege no conduct at all that occurred later than July 2008, Plaintiff cannot meet the relation back requirements of Rule 15(c), and all claims against the four individual Defendants identified for the first time on December 29, 2010 are barred by the two-year statute of limitations.

Plaintiff did not attempt to identify any defendant other than HCJC until he was granted a "discretionary" extension of time to perfect service until December 29, 2010, having utterly failed to demonstrate any type of "cause" for his failure to serve any Defendant within the original 120 days allotted by Rule 4(m). The Court's order permitting that extension directed Plaintiff to "provide instructions for service" on "*the Hamilton County Justice Center and any John Doe defendants (to the extent identified)*." (Doc. 16, emphasis added). The latter language merely mirrored the names of the defendants in the caption of Plaintiff's original complaint, and was not intended to express any other opinion on the identity of John Doe defendants.[9] The Court's discretionary decision to extend time for service cannot be viewed as a basis for tolling the limitations period for the addition of new parties. *Accord Gordon v. Jones*, 2011 WL 590316 *2 (W.D. Ky. Feb. 10, 2011, (compliance with the court's deadline for service under Rule 4(m), following an extension of time, did not serve to toll the statute of limitations); *see also Bradford v. Bracken County*, 767 F. Supp.2d at 743 n.1 ("scheduling orders do not toll statutes of limitations")*; Burdine*

---

[9]At most, the Court's language implies uncertainty that Plaintiff had yet identified any John Doe defendant, without authorizing the addition of any new defendants.

*v. Kaiser,* 2010 WL 2606257 *2 (N.D. Ohio June 25, 2010).

Aside from the applicable statute of limitations, the allegations in the  amended complaint illustrate a complete failure to state a claim against any viable Defendant.  While Judge Hogan's original order permitting suit to proceed no doubt was influenced by the gravity of the implied First and Fourteenth Amendment claims, as well as by Plaintiff's representation that he would soon amend to provide additional details, this Court cannot and should not permit the continuation of prisoner litigation that fails to state a claim against any Defendant, and for that matter, fails to seek either monetary damages or injunctive or declaratory relief, on the basis of a vague and never-realized promise to amend to determine an "appropriate relief demand in a later date."  (Doc. 18 at 18).  Even pro se litigants are expected to comply with the Federal Rules of Civil Procedure.  *See Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Clark v. Nat'l Travelers Life Ins. Co.,* 518 F.2d 1167, 1169 (6th Cir. 1973)("[A] court cannot create a claim which [a plaintiff] has not spelled out in his pleading.")(internal quotation marks omitted)(internal quotation omitted).

## 2.  Failure to Identify Any Viable Claim for Relief

Neither Plaintiff's original nor his first amended complaint seek any particular relief.  Any injunctive relief would be moot, given that the face of the complaint represents that Plaintiff was no longer incarcerated at HCJC at the time of filing.  Plaintiff also seeks no monetary damages.  Instead, in both his original and first amended complaints, Plaintiff seeks only "to determine an appropriate relief demand in a later date."  (Doc. 18 at 18).  When a Plaintiff states no claim for relief, dismissal under 28 U.S.C. §1915(e) is required.

### 3.  Failure to Identify Any Viable Defendant

Plaintiff waited more than eighteen months to file an identical "amended" complaint that amended none of his allegations, except for listing the names of four individuals in the caption of the first page.  Plaintiff's claims against each Defendant in the "amended complaint" are subject to dismissal for failure to state a claim.

### a.  The Hamilton County Justice Center

To prove his claim under §1983, a plaintiff must assert that "a person" acting under color of state law deprived him of rights, privileges, or immunities secured by the Constitution or laws of the Untied States.  A county jail or workhouse is not a "person" that can be sued under 42 U.S.C. §1983.  *See Rhodes v. McDannel*, 945 F.2d 117, 120 (6th Cir. 1991; *Mabry v. Correctional Med. Servs.,* 238 F.3d 422 (6th Cir., Nov. 6, 2000)(Table).

Even if the Court were to liberally construe the claim as against the County itself, Plaintiff would have had to allege that his constitutional rights were violated pursuant to a "policy statement, ordinance, regulation or decision officially adopted and promulgated" by the county.  *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978); *see also Petty v. County of Franklin, Ohio*, 478 F.3d 341, 344 (6th Cir. 2007).  Plaintiff must "identify the policy, connect the policy to the [municipal or local governmental entity]...and show that the particular injury was incurred because of the execution of that policy."  *Graham v. County of Washtenaw*, 358 F.3d 377, 383 (6th Cir. 2004).  No such allegations appear in Plaintiff's complaint.

### b.  The Four Individual Defendants

Three of the individuals identified in the caption of the amended complaint are

County employees at the Hamilton County Justice Center ("HCJC"), while a fourth named individual is not a County employee but instead a pastor "authorized" to "visit" the HCJC. No viable claim is stated against any of the four individuals.

### i. Capacity

The Sixth Circuit has long required §1983 plaintiffs to "set forth clearly in their pleading that they are suing the state defendants in their individual capacity for damages, not simply their capacity as state officials." *Shepherd v. Wellman*, 313 F.3d 963, 967 (6th Cir. 2002)(quoting *Wells v. Brown*, 891 F.2d at 593). Plaintiff's very minimal "amendment" fails to identify the capacity in which he seeks to bring suit against the three County employees. Moreover, it is impossible to infer either capacity or even whether damages are sought, considering that plaintiff seeks some unknown type of relief at some future time. *Compare Shepherd*, 313 F.3d at 969 (holding that plaintiff's request for monetary damages was insufficient to put individual on notice that he was being sued in his individual capacity). On the other hand, all three County employees have responded to the complaint by raising the defense of qualified immunity- a doctrine available only in the context of individual-capacity suits. *See Smith v. Jefferson County Bd. Of School Comm'rs*, 641 F.3d 197, 219 (6th Cir. 2011). For that reason, the Court will liberally construe Plaintiff's amended complaint as seeking relief against the County employees in both their official and individual capacities. By contrast, any claims against Defendant Buzek are presumed to be against him individually only, since that Defendant is not a County employee.

### ii. Failure to Allege Personal Involvement

Regardless of the capacity issue, a plaintiff cannot establish the liability of *any*

Defendant absent a clear showing that the Defendant was personally involved in the activities which form the basis of the alleged unconstitutional behavior. *Rizzo v. Goode*, 423 U.S. 362, 371 (1976); *Mullins v. Hainesworth*, 1995 WL 559381 (6th Cir. Sept. 20, 1995). When Plaintiff's allegations are reviewed in light of *Iqbal* and its progeny, it is clear that Plaintiff's complaint states no plausible claim for relief against any named Defendant. Instead, Plaintiff's most serious allegations, concerning his construed First and Fourteenth Amendment claims, involve no one who has been identified as a defendant in this suit.

Plaintiff's amended complaint generally alleges that he has "been to HCJC several times throughout the 6 years since 2001, [and]...denied to attend the regular weekly held Muslim services as early as December of 2004 and continued every time I was brought back to HCJC until July 2008." (Doc. 18 at 13). Plaintiff never identifies any *Defendant* who allegedly "denied" him this opportunity, even if the allegations are construed as within the limitations period.

Plaintiff further alleges that when he filed an unstated number of grievances at unspecified times, "HCJC indicated to me that either the Muslim clergy who conduct the services didn't show up or that I'm on a Protective Custody (PC) status." (*Id*.). Again, he fails to relate the alleged conduct to any named individual Defendant. Plaintiff alleges that unnamed officials on unspecified dates would not permit him to conduct his daily prayers other than in his cell, which he found to be "inappropriate" due to "disrespectful behavior by cellmates who frequently urinate while I'm conducting my prayers." (Doc. 18 at 14). Other unnamed officers on unidentified occasions have allegedly "stopped me from continue[ing] to pray," and have "removed my prayer times schedule stating that they don't

allow 'terrorist shit' in the jail." (*Id*.).  The only person identified by name in this portion of

Plaintiff's complaint is a non-defendant, the "jail director at HCJC, Mr. Art Conley," who is

alleged to have told Plaintiff that "I'm in his jail not the Holiday Inn and that if I can't do the

time I shouldn't have committed the crime." (*Id*.).  Aside from a reference to Mr. Conley,

the entirety of the amended complaint contains references to only two individual

Defendants, one of whom (Buzek) is not a County employee.

### iii.  **Defendant Buzek**

To prove a §1983 claim against him, Plaintiff must show that this private individual

acted "under color of state law" in violating Plaintiff's civil rights.  Plaintiff alleges only that

Buzek is "one of the authorized pastors" permitted to conduct services at the jail.  (Doc. 18

at 15).  In some circumstances, this may be sufficient.  *See Phelps v. Dunn*, 965 F.2d 93

(6th Cir. 1992)(holding that volunteer chaplain acted "under color of state law").  Leaving

aside the question as to whether Plaintiff's allegations should be construed as alleging that

Buzek acted under color of state law, however, Plaintiff fails to allege that Defendant Buzek

violated any of Plaintiff's constitutional rights.

In *Phelps v. Dunn* and other cases in which "state action" by a prison chaplain has

been alleged to violate an inmate's First and Fourteenth Amendment rights, the alleged

violation concerned conduct that prevented or interfered with an inmate's right to practice

his or her religion.  By contrast in this case, Plaintiff alleges only that Defendant Buzek

preached to other inmates in a manner that was "offensive" to him.  Plaintiff specifically

alleges: "Last year [2008], Pastor Dan Buzek ...delivered a sermon while I was in my cell

listening," which was "very offensive" to Islam and Muslims.  (Doc. 18 at 15).  Plaintiff

alleges that the sermon was preached in an area close enough to his cell that he could not help but overhear it, but does not allege that Buzek himself did anything to prevent Plaintiff from attending weekly services, or that Buzek joined unnamed officials who allegedly interfered with his practice of religion.  Plaintiff further alleges that Buzek brought printed materials to the jail which depicted "Islam as false, Arabs and Muslims as terrorists and Anti-American."  (*Id*.).

The preaching of a religious sermon that Plaintiff overheard and found "offensive" to his religion on one occasion does not a constitutional violation make, as wounded feelings alone are not actionable under §1983.  For similar reasons, Buzek's distribution of religious materials at the jail states no particular violation of Plaintiff's constitutional rights; Plaintiff does not allege that the mere existence of such materials burdened his exercise of his religion. *See generally Ha'min v. Lewis*, 440 F. Supp.2d 715 (M.D. Tenn. 2006)(county did not violate Muslim inmate's rights under Establishment Clause by distributing donated Bibles and religious materials).  In short, Plaintiff's allegations against Defendant Buzek fail to state a claim that Defendant Buzek violated any of Plaintiff's constitutional rights.

### iv.  County Defendants in their Official Capacities

To the extent that Plaintiff has identified three jail employees in their "official" capacities, his claims are against Hamilton County itself.  However, Plaintiff identifies no county policy or custom that relates to any conduct by any of the three named county employees, or that relates behavior by any of the identified County employees to the County's alleged failure to train or supervise.   Therefore, no claim has been stated.  *See*

*Monell, supra,* 436 U.S. at 690.

### v.  County Defendants Reed and Moore

Plaintiff's allegations similarly fail to state a claim against Defendants Reed and Moore in their individual capacities.  Defendants are female, but Plaintiff's more generalized allegations against unspecified "officers" (which again, refer to few dates or details) refer only to males.  Plaintiff never mentions Lieutenant Jacqueline Reed or Sergeant Michelle Moore at all in the amended complaint, except for in the caption.

Absent some action by the Defendants, they cannot be held liable in either their individual or official capacities under 42 U.S.C. §1983.  Although the title of both Defendants suggests some supervisory responsibility, *respondeat superior* is not a basis for liability under 1983.  *Leary v. Daeschner*, 349 F.3d 888, 903 (6th Cir. 2003). Supervisors are not liable based solely on their right to control employees, or "simple awareness of employees' misconduct."  *Id.*  Plaintiff's allegations are so patently deficient against Defendants Reed and Moore as to fail to state any claim.[10]

### vi.  Defendant McElroy

Aside from Defendant Buzek, the only defendant mentioned by name is Correctional Officer McElroy.  In the last section of his complaint, Plaintiff complains not about the denial of religious rights, but about being forced to share a cell with a series of "disrespectful" homosexual male inmates.  Plaintiff describes "many" (but not all) of these inmates, identified by Plaintiff by the acronym "HG" or "homosexual gay," as "very disrespectfull [sic], specially those who made sexual advances towards me or made very

---

[10]Again, the alleged denial of Plaintiff's right to attend weekly Muslim services while he was housed in segregation does not identify conduct by any named Defendant.

19

disrespectfull [sic] negative remarks when I perform my prayers." (Doc. 18 at 16)   The

entirety of Plaintiff's allegations against Defendant McElroy state:

> Officer McElroy purposely housed a HG in my cell who I found to be
> extremely disrespectful due to his posing and sexual advances.  My
> grievances ignored as usual and was told that I don't run the jail and that I'm
> homophobic and can't choose who to be with.  The HG was removed by
> another officer who told me that the HG inmate was wrongly placed by officer
> McElroy.  The next day Officer McElroy was outraged to find out that the HG
> inmate was not in my cell, he woke me up and placed the handcuffs on my
> hand and ordered me to pack my "shit" up, shortly after, breakfast was
> served as he intended to escort me to the "hole," he ordered me to eat my
> breakfast with my cuffed hands in the presence of the other inmates.  Again
> my grievance on Officer McElroy didn't make any diff. And he enjoyed the
> coverups by HCJC.

(Doc. 18 at 17).

Construing Plaintiff's allegations liberally, they fail to state a claim for a violation of

Plaintiff's First or Fourteenth Amendment rights by Defendant McElroy.  The Defendant's

placement of a homosexual inmate in Plaintiff's cell does not violate his right to freely

practice his religion, no matter how "disrespectful" or offensive Plaintiff found the cellmate

to be.  This is not a case in which Plaintiff has alleged deliberate indifference to his

physical safety.  Plaintiff's allegations against Defendant McElroy fail to state any claim

under §1983 because at most, they amount to hurt feelings concerning his religious beliefs

as a result of his cellmate's actions.   *See Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir.

1987)(verbal abuse or harassment not actionable). Likewise, while Plaintiff alleges that

Defendant McElroy ordered him to move cells in a rude manner and for an unjustified

reason (his claimed outrage at the "HG" having been moved to another cell), neither cell

assignments nor rudeness are actionable under §1983.

It is incontrovertible that "corrections officials retain broad discretion over the

administration of prisons, including housing in general and cell assignments in particular."
*Quick v. Mann*, 170 Fed. App'x 588, 590 (10th Cir. 2006)(citing *Bell v. Wolfish*, 441 U.S.
520, 540 n. 23 (1979)).  For obvious reasons, courts have widely rejected any notion that
a prisoner has any constitutional right to choose his cellmate.  *See Murray v. Bledsoe*, 650
F.3d 246 (3rd Cir., 2011)(*per curiam*); *Allen v. Purkett*, 5 F.3d 1151, 1153 (8th Cir. 1993);
*Harris v. Greer*, 750 F.2d 617, 618 (7th Cir. 1984).  This truism holds even if a plaintiff's
cellmates are "annoying, offensive, strange, rude," or otherwise undesirable as living
companions.  *Dunbar v. Caruso,* 2011 WL 3474004 (E.D. Mich., July 12, 2011)(quoting
*Blue v. Knowlin*, 2009 WL 2843315, at *4 (D.S.C. Aug. 31, 2009)); *see Curtician v. Kessler*,
2009 WL 2448106 at *8 (W.D. Pa. Aug. 7, 2009)(Plaintiff's claim that Defendants failed to
protect him by "forcing" him to share a cell with various black Muslim inmates failed to state
a claim in the absence of evidence that risk of serious harm existed "other than the
perceived danger conjured up by Plaintiff's blatant racism."); *Lindell v. Daley*, 2003 WL
23277280 at *10 (W.D. Wis., Nov. 21, 2003)(Plaintiff had no constitutional right to share
a cell with a white cell mate, notwithstanding knowledge by prison officials that Plaintiff did
not get along with non-white inmates).   Needless to say, Plaintiff also had no constitutional
right not to be handcuffed for purposes of transport, at a time when breakfast was being
served.

### B.    Defendants' Motions to Dismiss and Motion for Judgment on the Pleadings

As discussed above, Plaintiff's first amended complaint can and should be
dismissed pursuant to §1915(e) because: (1) all claims are barred by the statute of
limitations; (2) Plaintiff seeks no particular relief; and (3) Plaintiff has failed to state a claim

against any named Defendant. Through a procedural anomaly, Plaintiff's amended complaint escaped full screening when it was filed on December 29, 2010, leading to the present posture of Defendants having all offered additional grounds for dismissal through dispositive motions. To the extent that it is necessary to review those motions, I recommend that they be granted.

### 1. Defendant Buzek's Motion to Dismiss

Defendant Buzek seeks dismissal on the basis that Plaintiff fails to make any demand for relief (whether injunctive or monetary), and "fails mention any claim that entitles him to relief." (Doc. 23). The Court agrees, as discussed *infra*, that Plaintiff's complaint fails to comply with Rule 8 and therefore is subject to dismissal under Rule 12(b)(6). In the alternative, in discussing the specific allegations against him, Defendant Buzek argues that Plaintiff "has still failed to allege that Defendant Buzek in any way has infringed on his 1st Amendment rights." (Doc. 23 at 3-4). Again, the Court agrees.

In his opposition to Defendant's motion to dismiss, Plaintiff presents an argument that his *pro se* complaint was sufficient to state a claim for relief under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). I do not agree that Plaintiff's *pro se* complaint was or should be so construed, but as discussed below in the context of Plaintiff's tendered second amended complaint, Plaintiff's claim against Defendant Buzek in his individual capacity would still be subject to dismissal as moot.

### 2. Defendant Hamilton County's Motion to Dismiss

Defendant HCJC's motion is based upon the simple proposition that a building is not a person under §1983. Plaintiff does not argue to the contrary. And the Court agrees.

### 3.  Motion for Judgment on the Pleadings

The three individual County Defendants all seek dismissal on grounds that none received service until April 22, 2011, 688 days after the Complaint was filed, and that such delayed service should be considered to be ineffective and improper based on the facts presented.  The County asserts that it has been severely prejudiced from the delay in service.  Plaintiff's allegations in part concern the processing of grievances from 2008, which have been destroyed pursuant to the routine records retention policies of the jail. (Doc. 39, Ex. 1).  Likewise, documents dealing with Plaintiff's protective custody status and cellmate assignments no longer exist.  (*Id*.).

Plaintiff argues that because the Court already permitted service pursuant to Rule 4(m) under its discretionary authority, Defendant's arguments are moot.  However, Rule 12(b)(4) and Rule 12(b)(5) specifically permit challenges to process and to the service of process.  The Court's prior *ex parte* ruling does not preclude those challenges.

The same Defendants seek judgment on the pleadings concerning any claims that arose outside of the two-year statute of limitations.  HCJC records reflect that Plaintiff was incarcerated at intermittent times between 2001 and 2008, with his two most recent periods of incarceration from October 19, 2006 until February 15, 2007, and from April 29, 2008 until July 14, 2008.  For the reasons previously stated, Plaintiff's claims prior to June 2007 as well as all claims against the individual Defendants are statutorily barred.

Last, Defendants argue that they are entitled to qualified immunity.  As discussed, Plaintiff made no allegations at all against Defendants Moore and Reed in his original or first amended complaints.  Plaintiff concedes this (Doc. 44 at 6), and argues only that his

proposed second amended complaint cures this fatal defect.   Although the complaint contains some reference to Defendant McElroy, that Defendant persuasively argues that there is no constitutional right not to be incarcerated with a homosexual inmate.

Plaintiff also generally argues that his *pro se* complaint alleges that the "County Defendants, directly and/or through a conspiracy, violated Mr. Aladimi's right to freely exercise his religion."  (Doc. 44 at 6-7).  However, as discussed *infra*, all of the "County Defendants" are entitled to dismissal because none of the allegations pertain to the actual named Defendants, as opposed to unidentified male "officers."

### C. Plaintiff's Motion to File A Second Amended Complaint

Rule 15(a)(2) requires the court to "freely give leave [to amend] when justice so requires."   As Plaintiff acknowledges, to determine whether justice "requires" the grant of a motion to amend, the court "must consider a number of factors, among them '[u]ndue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment.'" *Wade v. Knoxville Utilities Bd.,* 259 F.3d 432, 438 (6th Cir. 2001)(quoting *Head v. Jelicho Hous.* Auth., 870 F. 2d 1117, 1123 (6th Cir. 1989)). Here, most of the relevant factors disfavor amendment.  Plaintiff unduly delayed in filing both his first and second proposed amendments, failed to cure deficiencies in his first amendment, with no notice to new parties, resulting in undue prejudice to the Defendants. In addition, the amendments would be futile because they still fail to state any claim that would survive a motion to dismiss against any identified Defendant.

### 1. Delay in Filing, Lack of Notice, Failure to Cure Deficiencies, and Prejudice

Through counsel, Plaintiff's motion for leave to file a second amended complaint was filed on June 20, 2011, more than *two years* after initiating suit. Plaintiff's tendered second amended complaint - expanded to 170 paragraphs and 23 pages - makes substantial changes to both the claims asserted and to the identities of the defendants, although he still fails to identify the capacity of any individual County defendant. In addition to clarifying that Plaintiff's original claims assert jurisdiction under 42 U.S.C. §1983 and under 28 U.S.C. §1331, Plaintiff's tendered amendment seeks to assert entirely new claims arising under 42 U.S.C. 2000cc-1 (RLUIPA) and under 42 U.S.C. §1985. (Doc. 36-1, ¶1).

For the first time, Plaintiff identifies Simon L. Leis, Jr., the Hamilton County Sheriff, as a defendant. He also more clearly identifies Defendants David McElroy, Lt. Jacqueline Reed, and Sgt. Michelle Moore, and identifies Defendant "Daniel Brian Buzek" as "an authorized pastor at HCJC." (Doc. 36-1, ¶15). The proposed amendment deletes all references in the caption to "John Doe(s)" or to the "Hamilton County Justice Center" as party Defendants. Last, Plaintiff now asserts a claim for relief, seeking both compensatory and punitive damages, as well as attorney's fees under 42 U.S.C. §1988. (Doc. 36-1 at 23).

Plaintiff made no legitimate effort to serve the Defendants at the initiation of this lawsuit. Although the Court directed the United States Marshal to effect service with costs to be advanced by the United States, that service was limited to "defendant Hamilton County Justice Center *as directed by plaintiff*." (Doc. 6 at 3). Plaintiff offered no directions, instead completing a form addressed only "to whom it may concern," which could not be

served.  Plaintiff originally represented that he would amend his complaint to more particularly identify defendants upon his release from Butler County in August 2009, but failed to file anything additional until warned by the Court more than a year later that he faced dismissal for failure to prosecute.  Even then, he sought extensions, which were liberally granted until he filed an "amended" complaint on December 29, 2010. Subsequent service of that amended complaint in April 2011 gave Defendants notice of suit for the first time.  Plaintiff's lack of any good faith effort to serve anyone prior to the expiration of the applicable statute of limitations disfavors granting his latest proposed amendment.

The County Defendants would be even more prejudiced from the tardiness of this latest amendment.  The proposed amendment contains new details relating to Defendants Reed and Moore and how they processed grievance forms, (Doc. 36-1, ¶¶68, 69), which forms have been destroyed in the normal course of business with the passage of time. (Doc. 39, Ex. 1).  Similarly, any classification documents which would have explained the "who and why" of certain cell assignments during the years in dispute have been destroyed.  (*Id*.).  No individual defendant had any actual notice of the suit during the 688 days that elapsed between the filing of Plaintiff's original complaint and service of his first "amended" complaint.

In some sense, Defendant's opposition to Plaintiff's proposed second amended complaint requires the Court to revisit its previous order extending the time in which Plaintiff was required to perfect service under Rule 4(m).  Defendants point out that the Court previously concluded that Plaintiff failed to demonstrate "good cause" for any extension of service, and vigorously argue that the factors to be weighed under Rule 4(m) disfavor the

26

lengthy extension previously granted by this Court.  *See, e.g., Wise v. Dep't of Defense*, 196 F.R.D. 52, 55-57 (S.D. Ohio 1999)(identifying factors as: (1) the length of additional time required to perfect service; (2) prejudice to the defendant from the delay; (3) whether the defendant had actual notice of the suit; (4) whether a dismissal without prejudice nonetheless would prejudice the plaintiff because the case would be time-barred; and (5) whether the plaintiff made a good faith effort to serve the defendant within the time allowed); *see also Slenzka v. Landstar Ranger, Inc*., 204 F.R.D. 322, 326 (E.D. Mich. 2001).

Making a determination of when and whether to exercise discretion under Rule 4(m) is complicated when the plaintiff is a prisoner proceeding *in forma pauperis*.  Often, as occurred in this case, the determination of whether to exercise discretion must be made in a vacuum, without full knowledge of all facts likely to be known when a plaintiff is represented by counsel, and/or when defendants have already made a limited appearance to object to service.  For a *pro se* prisoner granted the right to proceed *in forma pauperis*, the court is obligated to issue process so long as reasonable steps have been taken by the plaintiff to identify for the court the defendants named in the complaint.  *See Byrd v. Stone*, 94 F.3d 217, 219 (6th Cir. 1996).  Not infrequently, courts will exercise their discretion to exceed the 120 days provided for service by Rule 4(m) when it appears that a delay in service is attributable to some administrative error by the Court or the United States Marshal Service.  *See, e.g.*, *Byrd v. Stone*, 94 F.3d at 220 (finding delays by Marshal Service constituted "good cause" for extension); *Abel v. Harp*, 122 Fed. App'x 248, 252 (6th Cir. 2005)(finding good cause existed where plaintiff "did not idly sit by when he knew there

27

was a problem with service on the defendants.").

  With the benefit of hindsight and the additional facts presented by Defendants herein, the Court would not again exercise its discretion to extend the time for service. Plaintiff became aware of a problem with service on June 13, 2009, when his single summons addressed "to whom it may concern" was returned unexecuted.  Plaintiff made no good faith attempt to promptly identify the Defendants or to provide this Court or U.S. Marshal service with adequate directions for service of any defendant until more than 18 months after filing suit.  Service of the newly proposed second amended complaint would be improper under Rule 4(m).  While the Court cannot turn back time to reconsider its December 2010 order,  the grounds stated by Defendants provide a strong basis for this Court to deny further amendment.

  Because Plaintiff provided no timely information through which the United States Marshal could effect service on his behalf, both denial of the proposed amendment and dismissal are appropriate.  *See, e.g., Rochon v. Dawson*, 828 F.2d 1107, 1110 (5th Cir. 1987)(dismissal due to plaintiff's "inaction and dilatoriness." and holding that a plaintiff "may not remain silent and do nothing to effectuate such service" but should "attempt to remedy any apparent service defects of which a plaintiff has knowledge." ); *see also VanDiver v. Martin*, 304 F. Supp.2d 934, 943 (E.D. Mich. 2004)(relying on *Rochen* in dismissing for failure to perfect service); *McCombs v. Granville Exempted Vill. Sch. Dist.*, 2009 WL 467066, at *6 (S.D. Ohio Feb. 24, 2009)(declining to grant discretionary extension under Rule 4(m) when plaintiffs were asking to be allowed to serve defendants nearly two years after initiating suit).

28

### 2. Futility of Further Amendment

In addition to the Rule 15(a)(2) factors of undue delay, lack of notice, a failure to cure deficiencies between Plaintiff's original and first amended complaints, and undue prejudice to Defendants, examination of the proposed second amended complaint confirms the futility of further amendment.  Through counsel, Plaintiff now articulates three separate claims under federal law: (1) a claim that Defendants violated his First and Fourteenth Amendment rights under 42 U.S.C. §1983; (2) a claim that Defendants substantially infringed upon his practice of religion in violation of RLUIPA; and (3) a claim that Defendants engaged in a conspiracy to violate his equal protection rights under 42 U.S.C. §1985.

### a. Plaintiff's Claim Under 42 U.S.C. §1983 (¶¶71-108)

Plaintiff's proposed amendment to his §1983 claim, somewhat confusingly, continues to reference "Defendant HCJC." (*See, e.g.*, Doc. 36-1, ¶¶82, 85, 88).  Although HCJC is no longer listed as a defendant, a general allegation in a section setting out the parties states: "All actions by the Defendants Simon L. Leis, David McElroy, Lt. Jacqueline Reed, Sgt. Michelle Moore (hereinafter referred to collectively as 'Defendant HCJC'), and Daniel Brian Buzek were undertaken under color of state law which caused the deprivation of a rights [sic] protected by the United States Constitution and RLUIPA." (Doc. 36-1, ¶16). Plaintiff also includes new allegations that Defendants Leis, McElroy, Reed, and Moore "acted under color of state law as corrections and law enforcement officials," and that Defendant Buzek "had privileges more akin to those of HCJC employees, rather than visitors and guests, and as such...operated under color of state law."  (*Id.*, ¶¶114-115).

29

Defendants argue that even with the proposed amendment, Plaintiff's allegations fail to state a §1983 claim against any Defendant.  Just as in the original and first amended complaints, the only allegations against Deputy McElroy are that he deliberately housed Plaintiff with a "disrespectful homosexual" on one occasion between May and July 2008. Plaintiff continues to allege that Defendant McElroy became "outraged" when he learned that the homosexual cellmate had been moved at Plaintiff's request, and ordered Plaintiff to move by telling him to pack up his "shit."  (*Id.,* ¶ 64).   During the time when Plaintiff was handcuffed awaiting transport, breakfast was served and Defendant McElroy "kept Mr. Aladimi cuffed, and ordered [him] to eat his breakfast while handcuffed and in the presence of other inmates." (*Id.,* ¶ 65).  For the reasons previously discussed, these allegations do not rise to the level of a violation of any of Plaintiff's constitutional rights.

Plaintiff's second amended complaint newly charges Defendants Moore and Reed with involvement in the denial of two grievances: the first being a denial by Moore of a grievance on July 11, 2008 regarding Defendant McElroy's conduct, and the second a denial by Reed of a grievance involving the alleged removal of a Quran from Plaintiff's cell. However, "prison officials are not liable under §1983 for denying or failing to act on grievances." *Barnett v. Luttrell*, 414 Fed. App'x at 787 (citing *Grinter v. Knight,* 532 F.3d 567, 576 (6th Cir. 2008)); *see also Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Nor do prison officials incur §1983 liability for failing to properly investigate a grievance. *Carlton v. Jondreau*, 76 Fed. App'x 642, 644 (6th Cir. 2003).

In his reply memorandum, Plaintiff argues strenuously that he has alleged the only two facts required to survive a motion to dismiss - that all three individual Defendants acted

under color of state law and that the Defendants collectively violated Plaintiff's rights to attend weekly Muslim services and interfered with his ability to pray, and retaliated against him for exercising his religion.  Plaintiff further argues that he has alleged that the County Defendants attempted to coerce Plaintiff into supporting Christian beliefs.

The defects in Plaintiff's *pro se* complaint are not cured by his new, slightly more precise allegations.  Plaintiff never connects any of his new allegations with a time period not barred by the statute of limitations, and never connects the pertinent claims with any particular actions undertaken by any of the named Defendants.

### b.  New RLUIPA Claim (¶¶117-135)

Plaintiff's new RLUIPA claim alleges generally that "[a]ll of the Defendants are the 'government' for purposes of RLUIPA, because each acted under of color of state law." However, the only Defendants identified in the context of Plaintiff's RLUIPA claim are "Defendant HCJC" and Defendant Buzek.

Plaintiff alleges that "HCJC (as opposed to"Defendant HCJC") is an "institution" under RLUIPA and receives federal financial assistance.  (Doc. 36-1, ¶¶126-127). Plaintiff alleges that "Defendant HCJC [presumably meaning the "collective" group of three individuals] placed a substantial burden on Mr. Aladimi's religious exercise in that it [sic] forced him to modify his behavior by forcing him to forego his attendance at Friday Muslim services, which forced him to violate his beliefs." (*Id.*, ¶ 128).

The County Defendants argue that the amendment should not be permitted because relief under RLUIPA is limited to injunctive and declaratory relief.  Because Plaintiff is no longer incarcerated, his claims are moot.  In his reply memorandum, Plaintiff

argues that monetary damages are available under RLUIPA when the claim is, as here, against County Defendants who are not within the protection of the Eleventh Amendment.

 Compare *Sossamon v. Texas*, 131 S.Ct. 1651 (2011)(holding that RLUIPA generally authorizes only injunctive relief and does not waive a state's sovereign immunity from suit for money damages).  The extent to which RLUIPA permits damage claims against individual Defendants in their official capacities, when the Defendants are County employees, remains an open question.  However, this court has recently acknowledged that suits against officials sued in their individual capacities under RLUIPA for monetary damages "would be in the nature of a private right of action under RLUIPA," and "are not authorized."  *Treesh v. Bobb-Itt*, Civil Case No. 2:10-cv-211, 2011 WL 3837099 *3 (S.D. Ohio Aug. 29, 2011).

Aside from minimal allegations concerning the "collective" "Defendant HCJC," most of Plaintiff's RLUIPA claim consists of allegations against Defendant Buzek and his conduct in distributing printed materials and in preaching one sermon broadcast to inmates housed in the Protective Custody Pod on an undisclosed date in 2008, which Plaintiff was "forced to listen to...because the service is imposed on everyone at the pod whether one attends or not." (Doc. 36-1*,* ¶ 131).  For the same reasons discussed in the context of Plaintiff's §1983 claim, I find Plaintiff's new RLUIPA allegations against Defendant Buzek to be insufficient to survive a motion to dismiss, because Plaintiff does not allege that he personally or substantially burdened Plaintiff's exercise of religion.

Assuming that Plaintiff could theoretically assert an RLUIPA claim for monetary damages against the County Defendants in their official capacities, Plaintiff argues that the new amendment sufficiently does so.  Plaintiff contends that the "County Defendants'

conduct" imposed a substantial burden on Plaintiff's religious beliefs.  Plaintiff specifically points to the portion of his complaint wherein he alleges that "Defendant HCJC," (defined "collectively" in ¶16 as four employees), engaged in action that forced him to forego Friday Muslim services and to listen to Defendant Buzek's sermon.   However, Plaintiff's references to "Defendant HCJC" are far too vague and general.  Plaintiff never identifies any specific conduct by any of the referenced Defendants that violates RLUIPA.

To the extent that the HCJC building remains a Defendant, it is not *sui juris* and cannot be held liable under the RLUIPA.  In his reply memorandum, Plaintiff argues that HCJC is an "institution" managed or owned by the County, and as such provides services on behalf of the State of Ohio sufficient to qualify as a defendant under the terms of RLUIPA.  Plaintiff cannot have it both ways.  He does not identify HCJC (the building) as a  Defendant in the Second Amended complaint but instead seems to have abandoned those claims.  This Court will not construe the arguments in his reply memorandum as a third amended complaint.

### c.  1985 Conspiracy (¶¶136-170)

Plaintiff's brand new claim for relief under 42 U.S.C. §1985 alleges that Defendants Reed, Moore and McElroy "conspired together to deprive Mr. Aladimi, because of his race, of equal protection of laws and privileges and immunities under the laws."  (Doc. 36-1, ¶143).  Plaintiff relies on the same allegations previously recounted, including an allegation that "Defendant HCJC refused to act on Mr. Aladimi's grievance," from an incident on an unidentified date in 2007 involving an unidentified officer.  (*Id.,* ¶148).  Plaintiff also repeats allegations that unidentified officers purposefully housed him with homosexual males, and

33

that Defendant McElroy did so on one occasion.  Defendants Reed and Moore's part in the conspiracy involves the denial of two grievances.  (*Id.,*¶¶163-164).  Plaintiff alleges that these actions and others "in furtherance of the conspiracy" by Defendants were "part of a conspiracy to cover up, through threats and intimidation, the racially and religiously discriminatory conduct that led Mr. Aladimi to file the grievances, as well as to punish Mr. Aladimi for filing the grievances."  (*Id.,* ¶166).

To state a claim under 42 U.S.C. §1985, Plaintiff must allege that each of the named Defendants engaged in a conspiracy, for the purpose of depriving a person or class of persons of the equal protection of the laws, that the Defendants acted in furtherance of the conspiracy, and that Plaintiff was injured by being deprived of his rights.  *Vakilian v. Shaw*, 335 F.3d 509, 518 (6th Cir. 2003)(quoting *United Bhd. of C&J v. Scott*, 463 U.S. 825, 828-29 (1983)).  A plaintiff must make sufficient factual allegations to link two alleged conspirators and to establish the requisite "meeting of the minds" essential to the existence of the conspiracy.  *McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993).  Here, the proposed amendment is not specific enough to state a claim for relief under §1985 against any Defendant.  *Perry v. Southeastern Boll Weevil Eradication Found, Inc*., 154 Fed. App'x 467, 477 (6th Cir. 2006)(citing *Jaco v. Bloechle*, 739 F.2d 239, 245 (6th Cir. 1984))(conspiracy must be pled with specificity). Only McElroy, Reed, and Moore are mentioned at all with respect to this claim, but the allegations concerning McElroy and Moore are limited to a single incident wherein Plaintiff was housed with a "disrespectful homosexual" and fail to allege conduct that deprived Plaintiff of his right to practice his religion.  The subsequent denial of an unrelated grievance by Defendant Reed is not

alleged to have been taken in furtherance of a "conspiracy" with any other defendant.  *See also Estate of Smithers ex rel. Norris v. City of Flint*, 602 F.3d 758, 765 (6th Cir. 2010)(doctrine that a corporation cannot conspire with its own agents or employees applies to claims brought under §1985); *McCumons v. Marougi*, 2011 WL 308960 (E.D. mich. Jan. 27, 2011)(intracorporate conspiracy doctrine applied to police officers where plaintiff failed to plead any facts that suggested that officers were acting outside the scope of their employment).

Additionally, no possible construction of Plaintiff's prior complaint contains allegations that could be construed as a claim under 42 U.S.C. §1985. To paraphrase the analysis of another magistrate judge in one of Plaintiff's cases, "Plaintiff's counsel's valiant attempts to expand on the complaint's allegations and implications...notwithstanding," that effort cannot succeed in constructing a §1985 claim out of thin air, and somehow relate it back to the original complaint.  *See Aladimi v. Alvis House Cope Center*, 3:10-cv-121, Doc. 32 at 12).

### 3.  Qualified Immunity

As a final ground for opposing amendment, the three individual County Defendants present the defense of qualified immunity, because Plaintiff's allegations fail to demonstrate the violation of any clearly established constitutional right by any named Defendant.  While the Defendants' qualified immunity argument is meritorious, it is also superfluous.

### 4.  Defendant Sheriff Leis

Defendant Sheriff Leis has never been previously identified or served.  Plaintiff's

proposed second amended complaint seeks to assert new claims against Sheriff Leis as one of the individuals now collectively described as "Defendant HCJC."  (Doc. 36-1, ¶16).

### a.  Failure to State a Claim

The complaint contains no allegations specific to Sheriff Leis other than that the Hamilton County Justice Center is operated "under the authority of" the sheriff, and that both the sheriff and the HCJC "receive federal funding for housing federal prisoners."  (*Id.,* ¶¶11-12).  A supervisor's "failure to supervise, control or train the offending individual is not actionable unless the supervisor 'either encouraged the specific incident of misconduct or in some other way directly participated in it.'" *Shehee v. Luttrell*, 199 F.3d at 300 (quoting *Hays v. Jefferson County*, 668 F.2d 869, 874 (6th Cir. 1982)).  Even in his proposed second amended complaint, Plaintiff has made no allegations that the Sheriff was present during any of the alleged incidents, or that he was directly or personally involved in any manner. For that reason alone, the proposed amendment should be denied.

As the Sixth Circuit has repeatedly stated, in order for §1983 liability to attach to an individual defendant in his supervisory capacity, the Plaintiff must allege some individual conduct by that supervisor.  "At a minimum, a §1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate."  *Taylor v. Michigan Dept of Corrs.*, 69 F.3d 76, 81 (6th Cir. 1995)(internal quotation omitted).  For the same reasons discussed concerning other defendants, and particularly in light of any failure to allege conduct undertaken by Sheriff Leis, Plaintiff's allegations fail to state a claim against Sheriff Leis under 42 U.S.C. §1983, 42 U.S.C. §1985, or RLUIPA.

### b.  Prejudice From Lack of Prior Service

Defendant Leis opposes amendment on grounds that he has yet to be served, and would be greatly prejudiced if added at this late date.  Plaintiff argues that because this Court exercised its discretion under Rule 4(m) in December of 2010, that issue is settled. For the reasons previously explained, it is not.

Plaintiff alternatively argues that when Hamilton County prosecutors accepted service and appeared on behalf of the Hamilton County Justice Center, they received notice of the action because the same counsel would be presumed to represent Defendant Leis.  While the identity of counsel is one factor to be considered, it is hardly dispositive. Service on one county entity or prison employee does not put all other county entities or prison employees on "notice" of suit merely because the same attorneys would represent them.  *See Doe v. Sullivan County*, 956 F.2d 545, 552 (6th Cir. 1992)("Although as jailers the three defendants reasonably could be expected to have known of the instant suit, this alone is insufficient to impute to them knowledge of their future status as defendants.").

Plaintiff also argues that the Sheriff "knew or should have known that the action would have been filed against the Sheriff but for Mr. Aladimi's mistake concerning the proper party's identity."  (Doc. 43 at 3).   However, that argument makes little sense.  Not only did Plaintiff's original and first amended complaint make no mention whatsoever of the sheriff, but the lone mention of an "authority" related to the jail was the "jail director at HCJC, Mr. Art Conley."

### c.  Statute of Limitations

As with Plaintiff's other claims against other Defendants, most of the new claims

against Defendant Leis would be barred by the statute of limitations.  Rule 15(c) concerns the Relation Back of Amendments.  In order to relate back to the filing of the complaint, the relevant portion of the rule requires the new Defendant "within the period provided by Rule 4(m) for serving the summons and complaint" to have both "(i) received such notice of the action that it will not be prejudiced in defending on the merits"  and that Plaintiff prove that the new Defendant "(ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity."  *Id.*  The requisite conditions were not satisfied as to the addition of Defendants Moore, Reed, and Buzek in the first amended complaint,[11] and most definitely are not satisfied as to Defendant Leis.

### III.  Conclusion and Recommendations

For the reasons stated herein, **IT IS RECOMMENDED THAT:**

1.  Plaintiff's first amended complaint (Doc. 18) should be dismissed *sua sponte* pursuant to 28 U.S.C. §1915(e); and

2.  To the extent that any of Plaintiff's claims are construed to survive initial screening, Defendants' motions to dismiss (Docs. 23, 32) and motion for judgment on the pleadings (Doc. 35) should be **GRANTED**;

3.  Plaintiff's motion to file a second amended complaint (Doc. 36) should be **DENIED**.

---

[11] Plaintiff's reliance on the Ninth Circuit case of *McGuckin v. United States*, 918 F.2d 811 (9th Cir. 1990) to argue that Rule 4(m)'s 120-day time limit runs from the filing of Plaintiff's first amended complaint is misplaced.  Not only does Plaintiff fail to cite controlling Sixth Circuit law in accord, but unlike *McGuckin*, in this case Plaintiff failed to demonstrate good cause for the excessive delay in filing his first amended complaint.

*s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

ALI A. ALADIMI,                                                  Case No. 1:09-cv-398

        Plaintiff,                                         Barrett, J.
                                                                         Bowman, M.J.
v.

HAMILTON COUNTY JUSTICE CENTER, et al.,

        Defendants.

**NOTICE**

      Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

40